# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 5, 2002

## STATE OF TENNESSEE v. TIMOTHY MURRELL

### Direct Appeal from the Circuit Court for Madison County
### No. 00-834     Donald H. Allen, Judge

---

### No. W2001-02279-CCA-R3-CD  - Filed July 2, 2003

---

The appellant (defendant), Timothy Murrell, was convicted by a Madison County jury of the offenses of possession of cocaine with the intent to sell, possession of cocaine with intent to deliver, and possession of drug paraphernalia.  The two (2) felonious possession of cocaine convictions were merged.  The trial court sentenced the defendant to twenty (20) years in the Department of Correction for these offenses and eleven months and twenty-nine days for the drug paraphernalia conviction.  These sentences were to run concurrently for a total effective sentence of twenty years. In this appeal the defendant raises five issues for our review: (1) whether the evidence is sufficient to support the convictions for felonious possession of cocaine; (2) whether the trial court erred in declining to give the jury a missing witness instruction; (3) whether the trial court erred in allowing police officers to testify that the cocaine found in the defendant's possession was for re-sale; (4) whether the trial court erred in refusing to admit certain evidence for impeachment; and (5) whether the trial court erred in declining to apply a mitigating factor offered by the defendant at sentencing. After a thorough review of the record and applicable authorities, we find no reversible error. Therefore, the judgments of the trial court are AFFIRMED.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Didi Christie, Brownsville, Tennessee, for the appellant, Timothy Murrell.

Paul G. Summers, Attorney General & Reporter; Renee W. Turner, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

On January 18, 2000, officers of the Jackson Metropolitan Narcotics Unit executed a search warrant at 113 Dupree Street in Jackson, Tennessee. This residence was occupied by the defendant and his roommate, Troy Ross. According to Madison County Deputy Sammy Markin, as the officers entered the residence he saw the defendant throw two plastic baggies of what he believed to be rock cocaine into the bathroom. Investigator Jackie Benton testified that when she searched the bathroom she found two plastic baggies of what ultimately proved to be 4.6 grams of rock cocaine. Hand scales were found in a drawer in the residence.

The defendant put on proof that the cocaine was not his. According to the defense proof the cocaine belonged to the defendant's roommate, Mr. Ross. The defendant testified that Ross often smoked "crack" in the bathroom.

Following a presentation of the evidence summarized above the jury convicted the defendant as noted herein.

### Sufficiency of the Evidence

The defendant maintains that the evidence is insufficient to support the verdict because no cocaine was actually found on the defendant's person and there is no direct evidence in the record that the defendant possessed cocaine or sold cocaine. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" state's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the state "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

Turning to the facts of the instant case, it appears that at least one police officer saw the defendant throw what ultimately proved to be 4.6 grams of rock cocaine into the bathroom of his residence. The cocaine was cut into rocks of varying sizes and values. Hand scales suitable for weighing cocaine were also found at the residence.

Moreover, it is apparent from its verdict that the jury rejected the defendant's testimony that the cocaine was not his. This was the jury's prerogative as the trier of fact. Under these circumstances the evidence is clearly sufficient to support the two convictions for possession of cocaine with the intent to sell and intent to deliver.

Absent Material Witness Instruction

The defendant claims that he was entitled to have the jury instructed with what is commonly referred to as the "absent material witness instruction." That instruction is accurately embodied in Tennessee Pattern Instruction, Criminal section 42.16, which provides:

> When it is within the power of the state or the defendant to produce a witness who possesses peculiar knowledge concerning facts essential to that party's contentions and who is available to one side at the exclusion of the other, and the party to whom the witness is available fails to call such witness, an inference arises that the testimony of such witness would have been unfavorable to the side that should have called or produced such witness. Whether there was such a witness and whether such in inference has arisen is for you to decide and if so, you are to determine what weight it shall be given.
>
> (This inference does not apply to the defendant because [he] [she] has a lawful right not to testify and [his] [her] failure to testify cannot be considered for any purposes against [him] [her], nor can any inference be drawn from such fact.)

Committee on Pattern Jury Instruction (Criminal), Tennessee Pattern Jury Instructions-Criminal 42.16 (6th ed. 2001); see also State v. Middlebrooks, 840 S.W.2d 317, 334 (Tenn. 1992). The defendant filed a special request with the trial court to have this instruction given to the jury, and that request was denied. The issue therefore is whether the circumstances of the instant case trigger a requirement that the trial court instruct the jury concerning an "absent witness."

The defendant maintains that he was entitled to the "absent witness" instruction because the state failed to call the confidential informant whose previous drug buy from the defendant formed the basis of the search warrant in the instant case. The informant was not called as a state witness, and the defendant maintains that had the state called the informant, this individual would have corroborated the defendant's testimony that he had not sold any drugs from his residence. We

respectfully disagree with the defendant's contention given the circumstances of this case for the reasons that follow.

First, we are of the opinion that in the absence of any defense motion or court order to compel disclosure of the identity of the informant there was no duty on the part of the trial judge to give the requested absent material witness instruction. There is a common law privilege in Tennessee that allows the state to withhold from a criminal defendant the identity of a confidential informant. House v. State, 44 S.W.3d 508, 512 (Tenn. 2001). The court in House recognized the usefulness to law enforcement of confidential informants and acknowledged the danger to such persons if their identities were routinely revealed. Id. However, the court, citing Roviaro v. United States, 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), noted:

> Under the fundamental fairness limitation, the privilege [to withhold the informant's identity] must give way when the disclosure of the informant's identity or of the contents of his communication "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause . . ."

House, 44 S.W.3d at 512 (citing Roviaro, 353 U.S. at 60-61). Thus, Tennessee common law generally requires disclosure when the informant was a participant in the crime. See id. at 513; State v. Campbell, 549 S.W.2d 952, 954 (Tenn. 1977). As a result, when the identity of an informant who is also a material witness to the crime under prosecution is revealed by some means to the defense, and the state declines to call that known informant, the defendant may be entitled to an absent material witness instruction. See Jones, 598 S.W.2d at 224.

However, when the identity of the informant is allowed to remain confidential, the state is in effect granted a privilege to disqualify the informant as a witness and cannot be penalized for exercising that privilege by having the jury instructed that the informant is an absent material witness. See United States v. Jackson, 384 F.2d 825, 828 (3d Cir. 1967). In other words, "the 'missing witness' rule has no application to confidential informants. If the identity of an informant has been ruled properly kept in the confidence of the government, it would be 'ludicrous' to hold that the defense is entitled to a missing witness instruction." State v. John David Smith, 1984 Tenn. Crim. App. LEXIS 3016, at * 14 (Tenn. Crim. App. at Jackson, Nov. 14, 1984) (Daughtrey, concurring in part, dissenting in part) (docket no. and Westlaw citation not available).

The cogency of this rule is inescapable. The policy underlying the "absent material witness" instruction is that if a party can offer no good reason for failing to call a material witness who ostensibly would be disposed to favor that party, a logical inference arises that the witness' testimony would be unfavorable to the party. When an informant's identity is kept secret however, because of the common law privilege discussed earlier, the state has a good reason for not calling the witness, i.e. the exercise of the state's privilege. Under these circumstances the giving of an "absent material witness" instruction would be misleading to the jury and undercut the fact finding process. See generally Alan Stephens, Annotation, Adverse Presumption or Inference Based on State's Failure

to Produce or Examine Information in Criminal Prosecution – Modern Cases, 80 A.L.R. 4th 547, 572-74 § 9 (1990).

Turning to the facts of the instant case, we are unable to find in the record before us any defense attempts to compel disclosure of the informant's identity. Thus, the state was privileged not to call the informant as a witness and should not be penalized for exercising that privilege through a misleading absent witness instruction.

Moreover, it appears to us that regardless of any defense efforts that might have been made to disclose the identity of the informant, such efforts would have been futile. The informant in the instant case supplied information for a search warrant and did not witness nor participate in the crimes for which the defendant was actually prosecuted. Under all of the circumstances we are of the opinion that the trial court correctly denied the request for an "absent material witness" instruction.

## Opinion Testimony of Police Officers

The defendant complains that the testimony of two police officers was improperly admitted in this case. First, he alleges that Investigator Jackie Benton was improperly allowed to testify as to how much crack cocaine is usually purchased by a user of this drug and to the price of crack cocaine on the streets. Second, the defendant objects to Investigator Jeffrey Shephard's testimony, in response to a prosecution question, that he arrested the defendant for possession with the intent to sell because of the amount of crack cocaine found at the defendant's residence. The defendant characterizes the testimony of both these officers as impermissible lay opinion testimony. Because the nature of the testimony from each officer is different, we will analyze each testimony separately, rather than lumping both together as does the defendant.

### Investigator Benton

On direct examination of Investigator Benton the following colloquy took place between her and the assistant district attorney:

Q: Do you participate in weighing the cocaine or anything like that?
A: Sometimes I do.
Q: Do you recall if you did at this point?
A: No, sir, I don't believe I did.
Q: At some point, is it sent to TBI for complete analysis and official weight, to the Crime Lab?
A: Yes, sir.
Q: Were there any other items in the bathroom, either in the tub or scattered on the floor, other than the items that you described there?
A: No, sir.

Q:     Do you recall examining those items? Did you count how many crack cocaine rocks were in there or just take a sort of cursory glance at them?
A:     I don't recall if I did or not.
Q:     Investigator Benton, I want to talk briefly about your background. You've been with Metro Narcotics for five years, I believe you said?
A:     Yes, sir.
Q:     During that time with Metro Narcotics, have you investigated narcotics transactions or trafficking in the Jackson-Madison County area?
A:     Yes, sir.
Q:     Has some of that involved crack cocaine?
A:     Yes, sir.
Q:     Have you been involved in any undercover purchases, either through yourself or other officers or confidential informants, or crack cocaine?
A:     Yes, sir.
Q:     Have you also participated in making arrests of individuals for crack cocaine possession or possession with intent?
A:     Yes, sir.
Q:     Now, crack cocaine sales, or as far as your participation, do you have any idea how many you've participated in, either through confidential informants or yourself or other undercover officers?
A:     I've caught numerous amounts of crack, myself working for other agencies, and I couldn't tell you in the twelve years.
Q:     You yourself have participated as an undercover officer?
A:     Yes.
Q:     Now, let me ask you this. How is crack cocaine typically sold, in your experience?
A:     In rock form.
Q:     Is it typically sold or exchanged for cash?
A:     Yes, sir.
Q:     Typically, in your experience in purchasing it under cover, how much do you purchase at any give time?
A:     I've purchased at the least ten dollars ($10) worth, which is a ten dollar ($10) rock, and I've purchased up to an ounce.
Q:     In our experience here in Jackson purchasing crack cocaine, what's the typical amount purchased by someone on the street to use?
A:     Twenty dollars ($20), twenty rock.
Q:     A twenty dollar ($20) rock, would that be one hit of cocaine, or is that for multiple use, or do you know?
A:     It's just a bigger rock. They can smoke a little longer on it than ten dollars ($10) worth because it would be point two (.2) grams.
Q:     Point two (.2) grams would be the weight of what size?
A:     Twenty dollars ($20).
Q:     In looking at that evidence in there, are there numerous crack cocaine rocks?
A:     Yes, sir.

Q:      Do you see anything in there that would look like twenty dollar ($20) rock?
A:      Yes, sir.
Q:      About what size would that rock be and the equivalent?
A:      About the size of the top of my little finger.  It just depends sometimes on if you're white or black or male or female how good you're served, too, so it just depends.
Q:      By the person selling it, you mean?
A:      Yes, sir.
Q:      Would it have anything to do with whether you're a regular customer or not?
A:      Sometimes it does.  Depends on if they have a large quantity or if they have just a little bit.
Q:      Do you see cocaine rocks in there that are valued at more than twenty dollars ($20)?
A:      Yes, sir.
Q:      In looking in there, do you see the largest crack cocaine rock in there?
A:      Yes, sir.  One of the plastic bags only has one rock in it.
Q:      Do you have any estimate of the value of that crack cocaine rock?

At this point the defense registered an objection on the basis "lack of expertise."  The trial court overruled the objection.

The defendant maintains on appeal that Investigator Benton was not qualified as an expert witness and that she was erroneously allowed to give a lay opinion as to the habits of drug dealers. Therefore, an analysis of the two evidentiary rules that arguably govern the admission of this type of evidence is in order.

Tennessee Rule of Evidence 701 provides:

> Opinion testimony by lay witnesses. – (a) Generally. – If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are
> (1) rationally based on the perception of the witness and
> (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.
> (b) Value.  A witness may testify to the value of the witness's own property or services.

Tenn. R. Evid. 701.  This rule permits a lay witness to testify in the form of an opinion in the circumstances outlined.  Thus, a lay person may, as appropriate, testify as to his/her personal observation of a fact or event in the form of an opinion commonly understood by most people.  See State v. Wingard, 891 S.W.2d 628, 636 (Tenn. Crim. App. 1994).

Tennessee Rule of Evidence 702 provides:

> Testimony by experts. – If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Tenn. R. Evid. 702. This rule deals with testimony in the form of an opinion based on the witness' particularized expertise on a subject under consideration by a court and/or jury. In order to testify based on this rule the witness must be qualified as an expert on the subject and the opinion may be based totally on expertise, on personal observation, or on some combination of both. In summary, lay opinion testimony under Rule 701 is limited to those observations of a lay witness that are not based on scientific, technical or other specialized knowledge which would qualify the witness as an expert under Rule 702. See United States v. Conn, 297 F.3d 548, 553 (7th Cir. 2002) (construing Fed. R. Evid. 701, 702).

It appears that most courts that have considered the question of whether police officers may testify to the habits of drug dealers have concluded that they may do so if they are qualified through experience, or other means, to testify as an expert witness under the federal and state counterparts to Tennessee Rule of Evidence 702. See Walter G. Amstutz & Bobby Marzine Harges, Evolution of Controversy: The Daubert Dilemma: The Application of Daubert v. Merrell Dow Pharmaceuticals, Inc. to Expert Testimony of Law Enforcement Officers in Narcotics Related Cases, 23 U. Haw. L. Rev. 67, 100-07 (2000) (collecting cases).

In Tennessee, this Court has found testimony such as that given by Investigator Benton to be admissible under Tennessee Rule of Evidence 702. See State v. Carey, 914 S.W.2d 93, 96 (Tenn. Crim. App. 1995); State v. William Ray Collier, M2001-00893-CCA-R3-CD, 2002 WL 170731, at *3 (Tenn. Crim. App. at Nashville, Feb. 4, 2002). Most recently a panel of this Court held that such testimony was admissible under Rule 702 or Rule 701. See State v. Samuel L. Giddens, No. M2002-00163-CCA-R3-CD, 2003 WL 1787289 (Tenn. Crim. App. at Nashville, Apr. 4, 2003). Notwithstanding the decision in Giddens, we believe the proper approach is to admit evidence such as that given by Investigator Bender under Rule 702 if the witness is properly qualified as an expert. We believe that a resort to Rule 701 when the witness' opinions are offered based on the particularized experience of trained narcotics officers is improper. See Conn, 297 F.3d at 554.

Turning to the facts of the instant case, it appears that Investigator Benton testified that she had been in law enforcement for twelve years. She had been in the military police and had specialized in the Jackson Police Narcotics Squad for five years. She had participated in numerous narcotics arrests involving crack cocaine. She had participated in undercover operations, used confidential informants, and made direct arrests for crack cocaine charges. We believe that Investigator Benton was qualified to testify as an expert witness under Tennessee Rules of Evidence

702 as to the value and packaging of crack cocaine for resale. Accordingly, we find that with respect to Investigator Benton the defendant's objection to the admitted testimony lacks merit.

<u>Investigator Shepard</u>

The defendant complains of the prosecutor's elicitation from Investigator Shepard that Shepard arrested the defendant with possession with intent to sell because of the amount of crack cocaine that was found. The State responds that the question was asked on re-direct examination of Shepard after the defense had inquired into the officer's motivation in arresting the defendant for a felony.

It does appear that on cross-examination, Shepard was asked whether he made the decision to charge the defendant with possession with the intent to sell. When Shepard answered that he made the decision, defense counsel then asked if Shepard had seen the defendant sell cocaine. Shepard responded that he had not.

We are of the opinion that these isolated two questions on cross-examination did not open the door to a wholesale inquiry into the officer's motivation for charging the defendant as he did. Such evidence is of dubious relevance and has the potential for undue prejudice. Nevertheless, in response to the cross-examination, the prosecutor asked Shepard what motivated him to charge the defendant with possession for resale. Given the brief mention of the reason, the weight of the evidence as a whole, and the instruction to the jury that, <u>inter alia</u>, the amount of controlled substance may raise an inference of intent to sell, we find that any error on this point was harmless. <u>See</u> Tenn. R. App. P. 36(b).

<u>Impeachment of Former Deputy Sammy Markin</u>

The defendant complains that he was not allowed to put Chief William Mitchell on the witness stand and inquire of Mitchell as to his opinion of Deputy Markin's credibility. The defendant also complains that he was not allowed to ask Mitchell about a specific instance where Markin was allegedly untruthful in denying allegations of excessive force in an unrelated case. Apparently, Markin had been terminated as a result of those allegations. In an offer of proof on this point the following exchange took place between defense counsel and Chief William Mitchell:

Q: Sir, during your personal acquaintance and in your professional opinion, have you come to form an opinion as to the truthfulness or untruthfulness of Mr. Sammy Markin?

A: Well, that's somewhat of a difficult question to answer. I can say that in the most recent IA investigation I conducted that resulted in his termination, that he denied all the allegations of misconduct that were involved.

Under questioning from the trial court Mitchell admitted that although he had known Markin for several years, he had no personal knowledge of allegations of misconduct against Markin with the exception of the incident that resulted in his termination.

Tennessee Rule of Evidence 608 provides in pertinent part:

> (a) Opinion and Reputation Evidence of Character. – The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) the evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked.
> (b) Specific Instances of Conduct. – Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's credibility, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness or concerning the character for truthfulness or untruthfulness of another witness as to which the character witness being cross-examined has testified. The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:
> (1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct has probative value and that a reasonable factual basis exists for the inquiry.

Tenn. R. Evid. 608. Under this rule before a witness can offer an opinion on another witness' truthfulness, it must be established that the character witness is sufficiently familiar with the primary witness' character to offer an opinion on the subject. See State v. Dutton, 896 S.W.2d 114, 188 (Tenn. 1995). In the instant case, although Chief Mitchell testified he knew Markin, he never stated how well he knew Markin, or how he was acquainted with Markin's character. The only arguable basis offered for a potential opinion as to Markin's character for truthfulness was that Markin had denied using excessive force after a complaint for that conduct was filed. As noted by the trial court, that is not proof that Markin lied, only that he denied the charges against him. The record is devoid of proof that this denial amounted to a falsehood. We do not know, for example, whether Markin's denial of the charges was based on a claim that the incident in question never occurred or whether Markin admitted the incident but denied that the level of force he used was excessive. While the

former might be a lie, the latter is a difference of opinion. Under these circumstances we believe the trial court correctly refused to allow Chief Mitchell to venture an opinion on Markin's character for truthfulness.

We are also of the opinion that the trial court correctly refused to allow Mitchell to testify as to alleged specific instances of conduct by Markin in an attempt to discredit the former officer. Rule 608(b) permits such proof as that offered by the defendant if the proof is elicited through cross-examination of the primary witness concerning that witness's character for truthfulness or untruthfulness.[1]   Also, a character witness may be asked about specific instances of conduct reflecting on character for untruthfulness if the character witness has testified as to the truthfulness of the primary witness.

However, under the circumstances presented in the instant case, the trial court correctly refused to allow Mitchell's extrinsic testimony as to specific instances of allegedly untruthful conduct on Markin's part. This issue is without merit.

Sentencing

In his last issue the defendant complains that the trial court refused to accept as a mitigating factor that the defendant's criminal conduct neither caused nor threatened serious bodily injury. We must respectfully disagree.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, 103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988). If this Court's review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's

---

[1]The trial judge ruled that Markin himself could be asked by the defense as to whether he lied concerning the allegations of misconduct against him. The defendant elected not to examine Markin on this point.

findings of fact are adequately supported by the record, then this Court may not modify the sentence imposed below. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The sentence range for a Class B felony for a Range II, multiple offender is twelve to twenty years. See Tenn. Code Ann. § 40-35-112(b)(2). In setting the appropriate sentence within the range for a Class B felony, the trial court is to start with the minimum sentence in the range, increase the sentence as appropriate for any enhancement factors, and then decrease the sentence as appropriate for any mitigating factors. See id. § 40-35-210(c)-(e). The trial court in this case enhanced the Defendant's sentence from the minimum sentence of twelve years to a sentence of twenty years after finding three enhancement factors and no mitigating factors. Specifically, the trial court determined that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, see id. § 40-35-114(1) (Supp. 2001) (amended 2002); the defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community, see id. § 40-35-114(8); and, the felony was committed while the defendant was on some form of release, see id. § 40-35-114(13). These findings are clearly supported by the record.

The defendant relies on State v. Ross, 49 S.W.3d 833 (Tenn. 2001), to argue that the trial court erred in refusing per se to consider Tennessee Code Annotated section 40-35-113(1) as a mitigating factor. Although the defendant is correct that there is no per se rule of exclusion of this mitigating factor in cocaine possession cases, both the supreme court and this court have held that a trial court may accord this factor very little weight in the overall sentencing determination. See, e.g., State v. Chianti Fuller, No. M2001-00463-CCA-R3-CD, 2001 WL 1660846 at *6 (Tenn. Crim. App. at Nashville, Dec. 28, 2001). Given the seriousness of the enhancement factors in this case we believe this mitigating factor is entitled to very little weight and that the defendant's sentence is eminently appropriate.

<u>Conclusion</u>

In light of the foregoing the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE